16 So.2d 511

**ALMON v. MORGAN COUNTY et al.**

8 Div. 266.

Supreme Court of Alabama.

Feb. 3, 1944.

Chas. H. Eyster and Ben L. Britnell, both of Decatur, for appellant.

Norman W. Harris, of Decatur, for appellees.

FOSTER, Justice.

The question in this case is whether amendment to the Alabama Constitution No. 44, which was ratified and by proclamation became effective November 15, 1940, operated to permit a local act of the Legislature, approved May 28, 1943, so to operate as to put the compensation of the Judge of Probate of Morgan County on a salary basis beginning October 1, 1943 (Local Acts 1943, page 34), according to its terms, in contravention of sections 68 and 281 of the Constitution of Alabama.

It is conceded that the Local Act cannot have the effect unless the amendment, supra, serves to modify sections 68 and 281, supra, so as to justify an application of the Act after appellant has entered upon his term of service as judge of probate.

The answer to the question depends upon a proper construction of the Amendment No. 44, supra.

There is no doubt but that an amendment to the Constitution is permissible whereby sections 68 and 281 are in substance so modified as not to prevent the immediate operation of the Local Act, supra, though to do so, would be opposed to them as thus expressed in the Constitution. Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231.

The purpose of Amendment No. 44 was in response to a growing demand that public officers be placed upon a salary basis and not compensated by fees. By reason of section 96, Constitution, there had to be uniformity throughout the State as to that question. The first effort to do this was manifested in Amendment No. 2 applicable to Jefferson County, and it is in the following language: "The Legislature of Alabama may hereafter, from time to time, by general or local laws, fix, regulate and alter the costs, charges of courts, fees, commissions, allowances or salaries to be charged or received by any county officer of Jefferson County, including the method and basis of their compensation."

This language appears verbatim in Amendment No. 44, supra, here in ques-

tion. But the latter Amendment contains the following additional provisions: "And may provide for the placing of any such officer on a salary and that the fees, costs, and allowances collected by such officer be paid into the County treasury. All acts of the regular or adjourned session of the Legislature of Alabama which convened in January, 1939, fixing or purporting to fix the compensation of any such officer on a salary basis are hereby validated and confirmed."

The acts of 1939, affected by the last clause of the Amendment, related to those putting the tax collector and tax assessor on a salary, which by their terms operated at the beginning of the succeeding term of those officers. Such an Act as to the probate judge to begin operation with the beginning of the present term of the judge failed of passage. Those acts were up for passage at the session when the Amendment No. 44, supra, was proposed, and before it was ratified. The tax officers then were serving a term to expire October 1, 1943. The term of the judge of probate then current expired in January 1941. The present incumbent was elected in November 1940, at the same election in which the Amendment was ratified. The Local Act of May 28, 1943, was enacted at the next session of the Legislature after the ratification of the Amendment. By its terms it operated on the salary of the judge of probate beginning October 1, 1943.

■ We revert to the question of the intent of the Legislature and people in ratifying the Amendment No. 44, supra, in respect to its effect on sections 68 and 281, as well as on section 96, Constitution.

It does not purport to amend any definite section of the Constitution. It is necessarily an amendment of the effect of section 96, supra. It confers the authority on the Legislature to alter the salaries of the county officers (naming among them the probate judges) "from time to time."

Amendment No. 2 for Jefferson County is in the same language. The enabling act of September 14, 1915, Loc. Acts 1915, p. 374, made the change operate upon the expiration of the existing terms of the officers. The effect of that amendment on sections 68 and 281 was several times considered by the Court, directly and indirectly. And in each instance the ruling was on the theory that it amended sections 68 and 281 as applied to Jefferson County. Sloss-Sheffield S. & I. Co. v. Brooks, 19 Ala.App. 107, 69 So. 81, certiorari denied, Ex parte Sloss-Sheffield S. & I. Co., 209 Ala. 264, 96 So. 83; Riley v. Louisville & N. R. Co., 18 Ala.App. 279, 92 So. 23; Henry v. State ex rel. Hartsfield, 218 Ala. 71(9), 117 So. 626; Waldrop v. Henry, 207 Ala. 128, 92 So. 425; Hawkins v. Jefferson County, 233 Ala. 49, 169 So. 720; Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231.

All those cases were decided before the ratification of Amendment No. 44, supra. And all except the Downs case, supra, before the Act of the Legislature proposing Amendment No. 44. So that in using the words "from time to time" in the Amendment, it must be considered that it was understood to mean what had been so declared.

But it is said that there is a clear legislative policy showing a different interpretation upon the basis of other amendments to the same effect or their respective enabling acts. Amendment No. 4 relating to Montgomery, effective November 22, 1916, expressly operated at the beginning of the next term of office of the officers named to alter the salaries. See Jones v. McDade, 200 Ala. 230, 75 So. 988. We are not cited to an enabling act as to Montgomery County, which demonstrates appellant's theory. But the amendment itself gave clear expression to the idea that it should not affect the salaries during the pending term. But after that time, then "from time to time" had no express limitation as to sections 68 and 281.

Amendment No. 28, relating to Mobile County, effective November 21, 1934, is in substantially the language of that here pertinent, except that by express terms, it was "subject to the provisions of section 281 of the constitution," but does not include the sheriff of Mobile County. Amendment No. 33, relating to Calhoun and Tuscaloosa Counties, effective January 2, 1936, is substantially the same as that here under consideration. The enabling acts generally took operation at the beginning of the next term of office of the officers involved. This amendment as it is affected by section 96, Constitution, was called in question in Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234. But its effect on sections 68 and 281 seems not to have been questioned. As counsel point out in brief, the legislature under similar amendments has many times changed the character and amount of compensation of county officers

effective during their term of office, without any question being raised as to its effect.

With that history as a background, the Legislature of 1939 proposed four constitutional amendments relating to the situation here involved, which are Nos. 43, 44, 46 and 47. Amendments No. 44 (Morgan County, see Acts 1939, page 386); No. 47 (Mobile County, Acts 1939, page 580), uses substantially the same language, and only applies to the sheriff, whereas No. 28 already adopted, affects the other named county officers of Mobile County. While No. 28 is expressly subject to section 281. No. 47 has no such direct exception.

No. 43 (Etowah and Cherokee Counties, see, Acts 1939, page 1034), and No. 46 (Dallas County, Acts 1939, page 896) are the only amendments proposed by that Legislature which are expressly subject to section 281, supra, or are so in other terms. So that when the Legislature of 1939 was proposing four such amendments they used the same language as in the Jefferson County amendment, and two only saved the substance of Section 281, Constitution.

It seems perfectly clear that the Legislature intended that only those two of the four constitutional amendments should save those provisions intact. It is not for us to say that the Legislature did not understand what they were doing.

■■■ As an independent proposition, when the amendment confers the right to be exercised "from time to time" used in all of them, we think that some such effect must have been intended. It is argued that it means "from term to term." But to give it that meaning would make it add nothing. To do so from term to term did not infringe upon section 68 or 281. To have any meaning whatever, it meant to authorize such change to be repeated during the term of the incumbent. We fully recognize the salutary effect of a status where officers feel safe during their term against salary changes. The Legislature knew that also. And the Legislature prescribes the State's policy; the courts do not. These are local provisions. Some localities wanted the salary stability maintained; others did not. Either was permissible in a constitutional amendment. The choice was made by the Legislature and people at the election. Our province is only to give it effect as made.

We think the trial court correctly declared that by virtue of Amendment No.

44, supra, the Local Act of May 28, 1943, had the effect as there expressed to change the compensation of the Judge of Probate of Morgan County from a fee basis to a fixed salary of $5,000 per annum, beginning October 1, 1943.

Appellee, on cross-assignments of error, takes issue with the trial court on the question of whether section 9 of the enabling act, approved May 28, 1943, supra, is void because it imposes burdens on appellant in contravention of the due process clause of the Alabama Constitution. Sections 10 and 13, and the 14th Amendment of the Federal Constitution. The trial court made declaration that certain provisions of it violated those features of the Constitution, as follows: "And the said Judge of Probate shall pay the same within thirty days thereafter. The action of the board in allowing or disallowing any item on said list shall be final, and not subject to review." Section 9 provides that the judge of probate shall by the first day of August in each year file with the chairman of the Board of Revenue of the county a list of all uncollected court costs as there described, termed "List of insolvents." This list shall be published in a newspaper. "It shall be the duty of said Board * * * to carefully examine said list and to investigate whether or not said costs or part of same could have been collected by reasonable diligence," and "shall by resolution allow or disallow the items shown on said list," and the chairman shall notify the said judge of probate of all items disallowed, then follows the words above quoted from the decree held to violate the Constitution.

There is no provision for nor against notice and hearing on behalf of the probate judge. The question is whether those provisions have the effect of denying due process where it is guaranteed. It is patterned after section 209 et seq., Title 51, Code of 1940, relating to the list of insolvents for credit by tax collectors.

■■■ The relation which an officeholder has toward his office of a public sort, its compensation, tenure and duties to be performed, are such as that legislative change may be made in either without violating the due process clause of the Constitution. Ex parte Lambert, 52 Ala. 79; Hawkins v. Roberts, 122 Ala. 130, 27 So. 327; Hard v. State ex rel. Baker, 238 Ala. 517, 154 So. 77; Downs v. City of Birmingham, 240

Ala. 177, 198 So. 231; City of Birmingham v. Penuel, 242 Ala. 167, 5 So.2d 723.

But when the Legislature prescribes a rule of diligence on the part of an officer in discharging his duties imposed by law, and makes him personally or officially liable financially for a failure to exercise the required degree of diligence, we think a status is created whereby such officer is entitled to procedural due process in respect to the determination of that liability, since it is at least quasi judicial. 42 Amer.Jur. 473, et seq.

We accept the view that the constitutional requirement of due process does not require judicial determination by a court, constituted as at common law, but it may be had by an administrative tribunal, and in a summary manner, provided what is now called procedural due process is accorded, and the right to a trial by jury is not violated. The cases of Den ex dem. Murray v. Hoboken L. & I. Co., 18 How. 272, 15 L.Ed. 372, and Weimer v. Bunbury, 30 Mich. 201, cited by cross-appellant, did not relate to a situation where the officer was to be held accountable for due diligence to be passed on by an administrative officer or board. The balances for which the officers were held accountable were not such as arose from the negligence of the officer to be thus determined. The question was whether an administrative officer could examine the books and accounts and ascertain final results from them. It was neither a judicial nor quasi-judicial proceeding, but essentially executive, in which notice and hearing are not necessary. 2 Amer.Jur. 473–475, note 14.

Procedural due process, broadly speaking, contemplates the rudimentary requirements of fair play, whether in a court or an administrative authority, which include a fair and open hearing before a legally constituted court or other authority, with notice and opportunity to present evidence and argument; representation by counsel, if desired; and information as to the claims of the opposing party, with reasonable opportunity to controvert them. Garrett v. Reid, 244 Ala. 254, 13 So.2d 97; Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Morgan v. United States, 304 Ala. 1, 58 S.Ct. 773, 82 L.Ed. 1129; 42 Amer.Jur. 479; Frahn v. Greyling Realization Corp., 239 Ala. 580, 195 So. 758.

If procedural due process is accorded, the Legislature may confer on an administrative board the power to make a conclusive finding of facts, affecting a person's property rights, provided the constitutional right to a trial by jury is not violated (Ex parte Homewood Dairy Products Co., 241 Ala. 470, 3 So.2d 58; Morgan v. United States, supra; 42 Amer.Jur. 449, 451; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126), and the right to review the legality of the proceeding has no prohibitive burden. Wadley So. Rwy. Co. v. Georgia, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405.

It is the duty of the court to construe a statute so as to make it harmonize with the constitution if this can be done without doing violence to the terms of the statute and the ordinary canons of construction.

A statute may be enacted without containing provision for constitutional requirements but in such terms as not to exclude them and to justify the court in holding that it was intended to be subject to those requirements, which should then be treated as a feature of it. Montgomery Southern Rwy. Co. v. Sayre, 72 Ala. 443.

And so when an act confers on an administrative officer or board the power and duty to make a conclusive finding of facts which affects the substantial rights of another, when to do so requires procedural due process, and there is nothing to indicate an intention that such process shall not be applied, the court may in carrying out the intention of the legislature hold that such process was intended to be applied, when to do so is necessary to uphold its constitutionality on that account. Yamataya v. Fisher, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721; Bratton v. Chandler, 260 U.S. 110, 43 S.Ct. 43, 67 L.Ed. 157; 42 Amer.Jur. 470. This applies to one's tenure of office under an act providing for his removal for cause. Touart v. State ex rel. Callaghan, 173 Ala. 453, at page 466, 56 So. 211, 215; 43 Amer.Jur. 50, 51, section 212; State v. McEachern, 231 Ala. 609, 166 So. 36.

As we have noted, section 9 of the Act in question provides that "it shall be the duty of the Board of Revenue and Control to carefully examine said list and to investigate whether or not said costs or

part of the same could have been collected by reasonable diligence." In harmony with the principles cited, we will not so construe these provisions as to exclude the requirements of procedural due process, when there is in the Act nothing to indicate such a legislative intention. We therefore think that such requirements of the Constitution should be treated as impliedly applicable and as a feature of the Act.

And though the action of the board is also said in section 9, supra, to be final and not subject to review, we think that means to be so only if the required notice is given and hearing is duly had and the finding is based on evidence sufficient in law to that end of which a record should be made. The court will review those questions by certiorari or some other appropriate proceeding. 42 Amer.Jur. 627, et seq., section 211; 644, et seq., section 217; Alabama Power Co. v. City of Ft. Payne, 237 Ala. 459, 187 So. 632, 123 A.L. R. 1337. This is said to mean "substantial evidence." Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206(18 to 20), 83 L.Ed. 126; Rochester Tel. Corp. v. United States, 307 U.S. 125(9), 59 S.Ct. 754, 83 L.Ed. 1147.

The question of procedural due process in respect to the liability of a tax collector for insolvents has never been tested in this State. Sections 209 et seq., Title 51, Code of 1940; Timberlake v. Brewer, 59 Ala. 108; State v. McBride, 76 Ala. 51; Walling v. Morgan County, 126 Ala. 326, 28 So. 433; State v. Lott, 69 Ala. 147.

Section 210, Title 51, Code of 1940, requires the board to consult with the tax assessors in making its finding. We doubt not that if the commissioners' court or board of revenue should arbitrarily fix a liability on the tax collector for insolvents without notice to him, and a hearing by him and without evidence, he would have a right to review such finding by certiorari.

We are in accord with the decree of the trial court, except in holding that the portion of section 9 to which we have referred is violative of the due process clauses of the Constitution.

It would also be appropriate here to observe that the rights of the probate judge under section 9 and his liability to account will be determined when occasion arises on his claim that the finding of the board was either without procedural due process or on no substantial evidence. No such contention by him may ever be made. The question is now theoretical, if it may be said at the present to be justiciable.

Modified and affirmed.

GARDNER, C. J., and BOULDIN and STAKELY, JJ., concur.